Case number 318-0232, People of the State of Illinois, Appalachia v. Jeremiah Hillsman, Appellant. Your honors, may it please the court. Counsel, my name is Sean Conley. I'm an Assistant Appellate Defender with the Office of the State Defender and I represent Jeremiah Hillsman who was convicted after a jury trial of aggravated battery of a child and sentenced to 24 years incarceration. We've raised two issues on appeal. I intend to focus on the first issue which involves what we contend is the state's strategy of litigating Mr. Hillsman's character, but if your honors have any questions about the second issue which involves an initial crankle inquiry, I'm happy to answer those questions as well. On that first issue, there are a number of moving parts and I at least think that it looks a little bit like a number of other potential issues that are sometimes raised in these sort of cases and so what I hope your honors can come away with today is a clear understanding of what we are and are not arguing. What we are arguing is ineffective assistance of counsel. The deficient performance was counsel's failure to prevent the introduction of unfairly prejudicial evidence. The outline of the error that counsel failed to prevent was that the state spent an enormous amount of time and energy presenting a substantial amount of evidence on a variety of collateral matters that occurred after the child had already been injured. Those matters were episodes in which Hillsman either physically avoided the situation, sometimes lying to do so, or in which he expressed concerns for himself and his own family when the child and the child's family were in crisis. All of this evidence was used to paint Hillsman as uncaring towards the child and to argue that his lack of concern was evidence of guilt. Some of this evidence was also used as an opportunity for the state to bolster its case by having authority figures inform the jury that Hillsman was guilty and was a liar and that the state's witnesses, including the only other occurrence witness, were telling the truth. That is, the state's case seems to be designed to engender distaste for Hillsman and then to argue from that distaste and in order to parse that, I think it's helpful to consider what we are not arguing. We are not arguing that any particular statement by the prosecutor was itself a separate and legally cognizable error. For example, during rebuttal argument, the prosecutor explicitly stated the state's theme, saying in reference to Hillsman and the child's mother, who was both Hillsman's girlfriend and the only other adult who had access to the child at the relevant time, quote, I submit what's the difference is the mother's commitment to the child, end quote. That specific statement would not be reversible because it was in response to a defense argument, but the key is that this was not the point at which this theme was introduced early in the state's case in chief. Before the jury had even learned where the incident took place, it learned that Hillsman had spent part of the next morning soliciting sexual favors from a different woman while at the same time a police officer was knocking on his door and that he lied to that officer about why it took him so long to answer the door. Before the jury learned where this incident took place, it learned that Hillsman had repeatedly tried to sidestep a DCFS safety plan in order to gain access to his own child, and that DCFS believed it had enough evidence to say that Hillsman had committed this crime. And before the jury learned where this incident took place, the state had already begun laying the basis for evidence that Hillsman had lied about a school conference the morning of or to the actual events during the period in which the boy was injured. But it was also through her testimony that the jury learned that Hillsman had used the non-existent school conference as an excuse not to go to the hospital, that he had made further excuses not to go to the hospital, that he had expressed concern that he would lose his own son because of these events, that he did not ask about the child's condition, that he had expressed nervousness about talking to the police, and that he had contacted the mother while the police officer was waiting at his door to ask why the police were there and whether she had sent him. This evidence was reinforced by call logs, text messages, Facebook messages, and forensic reports on the couple's phones, and I note that those exhibits contain a significant amount of material that was not discussed in the briefs for my part because the state didn't talk about all of the material that it made available to the jury, and so it wasn't clear how much the jury paid attention to that material, but I'd encourage your honors to look closely at those exhibits. Then the state played interviews between Hillsman and a police officer that further emphasized that Hillsman lied about that school conference. There were no explicit admissions during those interviews, and this wasn't impeachment evidence because Hillsman had not testified yet. With regard to what had happened after the fact, it was not false exoneration evidence because having either a school conference or a broken-down car would not have been exonerating, but these interviews did include a police officer's comments on the evidence, including his belief that Hillsman was a liar and his explaining for both Hillsman and the jury's that the child's mother had already testified under oath in a different case, was subject to perjury charges if she lied, and was therefore credible. None of this evidence that I'm referring to directly related to what happened to the child. The only possible relevance was to support a consciousness of guilt argument, but the state presented all the facts that it child's mother, specifically that Hillsman said he would go to the hospital but never showed up, and perhaps because he was not under arrest, the evidence that he had avoided the police at his home was also in bounds, but that too came out during the mother's testimony that he had contacted her while the officer was there. Our position is that the rest of this evidence was inadmissible in the context of this case. Now another argument that we're not making is we are not making any general claims about admissibility. For example, the critique of consciousness of guilt evidence was meant to show that the probative value of such evidence is limited, and I'm not asking your honors to bar such evidence or to reverse merely because this was examples of such evidence. We're also not arguing that the evidence was inadmissible merely because it was prejudicial, as they say all evidence is prejudicial. When we talk about balancing the probative value of evidence with the prejudicial effect, we're talking about unfair prejudice, and specifically the undue tendency to suggest a decision based on an improper and especially an emotional basis, and under that principle our Supreme Court has held that the state is not entitled to present any and all otherwise admissible evidence. When the state possesses evidence with an undue tendency to suggest a decision based on emotion, when the probative value of that evidence is outweighed by that undue tendency, and especially when the state has other equally probative evidence that does not carry that undue tendency, the state is not allowed to present that unfairly prejudicial evidence. We're not arguing that any particular statement made by the judge was reversible error. The trial court's post-trial comments were not made in front of the jury, but they were relevant because they demonstrate that the state made an emotional argument supported by emotionally charged evidence. The fact that the judge found the evidence overwhelming but did so on the basis that Hilsman was scheming, conniving, and otherwise poorly behaved shows that the effect of the state's case on the listener had little to do with what happened in the apartment and a lot to do with the listener's impression of Hilsman as a person. It shows that the prejudice from this evidence was not fair prejudice. Finally, we're not making a reasonable doubt argument. We don't have to establish beyond a reasonable doubt that Hilsman would win without this evidence, but that being said, there were only two potential suspects, Hilsman and the child's mother. Both of them were consuming cannabis throughout the evening. No one testified to seeing the injuries occur. Although Hilsman was not consistent about what happened afterwards, he consistently denied hurting the child. The mother testified to hearing sounds of violence that evening, the implication being that these were the sounds of Hilsman causing these injuries, but she was not consistent in her description of those sounds and the child was handed off to her after those sounds and the child fed through the night. The state's expert established that the child would have been immediately symptomatic upon injury and would not have been able to function normally, including not being able to feed normally, which suggests that these injuries were not associated with those sounds. We simply do not know what happened in this case and we do not know when it happened. And absent the state's plea to emotion, there's no evidence that strongly implicates or exonerates either adult. And to put it another way, respectfully, the mother could very well and very easily have been my client under these facts instead of Mr. Hilsman. And with that, if there are no questions, we would ask that your honors reverse Jeremiah Hilsman's conviction and remand for further proceedings or in the alternative, remand for a new initial inquiry. Thank you, Mr. Chairman. Are there any questions? It please the court, your honors counsel. My name is Stephanie Raymond. I'll be representing the people of the state of Illinois. The defendant spends much time about what he does not argue. But what he does argue is that the evidence presented by the state was overly prejudicial, but the evidence presented by the state show defendant's consciousness of guilt. In that vein, the commission. I'm having difficulty hearing you. What about now? Much better. Better? Okay. Much better. Sorry. That's okay. Just to cite a portion from my brief from the Saxon case, the commission of a crime leaves usually upon it the consciousness of moral impression that is characteristic. That moral impression is what the state presented. The evidence that they presented, including messages to, um, another female while Danielle was at the hospital with the child show defendants attempt to distance himself from that crime. From the moment it happened, he lied about where he, why he didn't go to the hospital several times. He lied in the interviews over and over. He lied about why he didn't come to the door. All of this evidence is relevant, not relevant. I understand defendants not arguing. It's not relevant, but it's probative of his consciousness of guilt, which is circumstantial evidence of the crime. As defendants said, we don't know. I mean, there's two people in that apartment, two adults and a child. The child is injured. The state's presentation of this evidence shows defendants, like I said, way to distance himself from that. These false exculpatory statements, they're not conclusive evidence, but they're evidence of his consciousness of guilt in that, um, he's trying to, to make it. So he's, he's not involved in the case. Defendant brings up his, uh, case with his own son, which didn't come about until after the child was already in the hospital and the facts started to come to the surface. He gave interviews, um, to the police, which the police testified to that he was in a conference. Of course, we know that the, the person from the school came and testified that he was not in a conference. Um, and it's, it's these, these types of lies that defendant told that were, um, that showed his, you know, he tried him trying to distance himself from this crime. So it's the people's position that this is, um, more probative and it's not substantially outweighed by unfair prejudice, uh, regarding ineffective assistance of counsel. It's the people's position that he was not ineffective as this was all evidence, um, that was relevant and probative. Um, unless there are no questions for me, the people would ask that you can affirm defendant's conviction and sentence. Thank you, Mr. Raymond. Judge Holder, any questions? No, no, thank you. Judge Fryer? No, thank you. All right. And Mr. Shanley, any reply? Uh, just briefly, your honors, again, we're not arguing that, uh, this type of evidence is, uh, generally out of bounds. Uh, the problem here, just to give one example is again, the state is allowed to bring evidence that, uh, Mr. Hilsman tried to distance himself from the case. We don't deny that. Um, the question that we have is why it felt the need to introduce, for example, the contents of the Facebook messages between Mr. Hilsman and Miss, um, uh, Bowman, I believe is her name. Uh, regardless, she's not involved in the case in any way other than the fact that he was messaging with her, uh, the morning of, or after, uh, the child was injured. Uh, those messages were explicit. Um, it was a situation in which he is, uh, his girlfriend is in the hospital, uh, with the injured child. And, uh, he is, he's carrying on, uh, an attempted tryst with another woman. Uh, why, what does that add to the case? Uh, except to paint him as a CAD, uh, and ultimately the fact, not the fact, but the, the allegation that he's a CAD is the basis of the state's argument. Uh, this is the basis of the state's theory of the case. And, and that's why we take, you know, we take issue with that theme. That theme is a, is a problem. Uh, but that theme is put, pushed forward by this evidence that, uh, adds very little to the case, except, uh, except to paint him, uh, very, very poorly. Uh, you agree that all this evidence could come in. It could come in in, uh, I'll put it this way. I, I, I believe it could come in generally under the right circumstances. I do not believe that it can come in, in this particular case, because again, we're balancing the probative value of this evidence with the, the possibility, uh, of unfair prejudice, the possibility that the jury is going to look at that and respond in an emotional way instead of, uh, a factual way. Uh, and that's actually the basis of our critique. So you're making, basically you're making a 403 objection. Uh, yes, your honor. That would be, that would be basically correct. Yes. And that's a harder argument to make because it's, it's a, whether the judge has made an abuse of discretion, correct? That, that is, that is correct. Uh, however, the problem here, uh, for us is really that counsel did not make the objection. Uh, and ideally, we believe that, uh, this should have been, this should have been litigated. We should have a better record because the record as exists, uh, it speaks for itself. There is clearly something wrong going on here. This is not the, the majority of this evidence had nothing to do with what happened to the child. And so, uh, again, ideally counsel would have, uh, challenged this and we'd have a better record to address with which to address your question, your honor. Uh, but I mean, uh, consciousness of guilt has, as an evidentiary concept has been around for a long time and has been accepted in Anglo-American jurisprudence, correct? That is correct. And that is why we're not asking, again, not asking you to, uh, reject that concept. Uh, that would be an unrealistic request. However, it's important to understand and to recognize that while that concept is exceptionally old and well-established within our legal framework, it is a legal fiction. It's a well-established legal fiction, but a fiction nonetheless. It's not based on science. It's not based on, uh, it, it's been described as a pseudoscience. And I think that that's an appropriate description of it. And again, while it's unrealistic for me to ask you to abandon, uh, that concept, I think it is realistic to ask that we, uh, examine closely how valuable it really is, and particularly in a case such as this. But you are trying to attack the concept of consciousness and guilt in this case, really? It, well, your honor, it's attackable. It's not, it's, it's not a concept that's based on any sort of empirical, um, it's not an empirical concept. Oh, it isn't? Why isn't it? There's, there's no scientific basis for it. I mean, doesn't common sense tell you that people who commit crimes escape from those crimes, run away from those crimes? I, well, I, I think it's more complicated than that. I think it's pretty much the same thing. You were talking about behaviors that are distancing behaviors. You said it yourself earlier. I, I think that, um, I think that different people, uh, react to stressors in different ways and that there's no, uh, there's no, uh, legitimate and, and consistent way of quantifying those reactions. Well, empirical basis, does it not have some, does not mean absolute certainty. I would agree with that. Okay. I would agree. And again, I'm not asking to eliminate the concept I'm saying, for example, just, just as perhaps the most dramatic example, and I apologize. I see that my, my time is up. Uh, but to answer your question, that perhaps the most, uh, dramatic example is the, the claim that him not coming to the hospital, uh, is evidence of consciousness of guilt. Uh, to my mind, the emergency room is a place for family and no one, uh, no one has claimed that this man was part of this family. Uh, and I, I, who's the mother, uh, the mother's relationship to him there, they are, they were in some, some sort of romantic relationship, uh, but they had known each other for some short. Well, they had, I, I, I phrase it that way because they, they have known each other at the time had known each other for two months, roughly. Um, and had, uh, there's, there's evidence that they, uh, whatever the nature of their relationship, it had been going on for maybe a month before this, he had never met their family. He had never met her parents. Um, so it's kind of hard to put romantic next to this relationship. Well, your honor, it's not, it's, it's not my relationship. I, I, I, I will choose my words moving forward more carefully, but, uh, but the, the point, the point that I'm trying to make, your honor, is that when I look at this, uh, it makes no sense to me whatsoever for him to show up to the hospital. To me, I imagine my family, uh, going through something like this. And I imagine being offended by his presence at the hospital and, uh, other people can disagree with that, but that, that is the point that, that that's, that doesn't tell us, you know, perhaps it gives us some data point, but it's not a very valuable data point. All right. Thank you. Thank you. Thank you, judges. Thank you, Mr. Conley. And I want to tell you that your time never runs out if a judge is asking you a question. Thank you very much, your honor. Thank you both for your argument today. We will take this matter under advisement. Get back to you with a written decision. We'll now take a recess until our three o'clock case.